UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

UNITED STATES OF AMERICA   )   DOCKET NO. 5:12-CR-49-1
                      )
      vs.           )   VOLUME IV
                      )
MARTIN MARTINEZ SALDANA,   )
                      )
       Defendant.    )
_____)

TRANSCRIPT OF TRIAL PROCEEDINGS
BEFORE THE HONORABLE RICHARD L. VOORHEES
UNITED STATES DISTRICT COURT JUDGE
MARCH 7, 2014

APPEARANCES:

On Behalf of the Government:

    STEVEN KAUFMAN, ESQ.
    United States Attorney's Office
    227 West Trade Street, Suite 1700
    Charlotte, North Carolina

On Behalf of the Defendant:

    DENZIL H. FORRESTER, ESQ.
    Law Office of Denzil Forrester
    P.O. Box 32511
    Charlotte, North Carolina

    JESUS RICARDO CANALES, ESQ.
    Law Office of Rick Canales
    845 East Harrison Street
    Brownsville, Texas

Cheryl A. Nuccio, RPR, RMR, CRR
Official Court Reporter
United States District Court
Charlotte, North Carolina

<u>P R O C E E D I N G S</u>

(Court called to order at 10:22 a.m.  Defendant and jury not present.)

THE COURT:  Good morning.

ALL COUNSEL:  Good morning, Your Honor.

THE COURT:  So we're in session.  We have 12 of the 14 jurors here so we could start after we finish this charge conference, assuming we don't -- well, we'll be able to start in any event, but we hope the other regular jurors get here if we have -- I believe number 2 and number 6 have not arrived.

One issue the clerk brought to my attention, there were -- Government's Exhibit 19 is a copy of the aerial photo of the Saldana property on Ervin Houck Drive.  The question is whether the marked versions are suitable for going back to the jury as Exhibit 19 in hard copy.  Any objection?

MR. FORRESTER:  Your Honor, is there any way we can have the defendant out here because he might have greater insight.

THE COURT:  Let's get him out here.

(Defendant entered the courtroom.)

MR. FORRESTER:  No problems, Your Honor.

THE COURT:  All right.  Thank you.

THE CLERK:  There's one other one.  Do I need to show that one too?  There's two.

1          THE COURT:  So there are three, Madam Clerk?

2          THE CLERK:  One was without any markings and 19A and

3     19B had markings on them.

4          THE COURT:  All right.  19 is clear of any markings

5     and the other two have the markings.  So let them go back.

6          THE CLERK:  Okay.

7          THE COURT:  Now, have the parties reviewed the

8     verdict sheet?  The only change to the one we had yesterday

9     was to express issue three in terms of two different -- two

10    different aspects of the statute under which the defendant

11    could be found guilty.

12         MR. CANALES:  We have no issues, Your Honor.

13         THE COURT:  All right.  Then as to the instructions

14    themselves, as to count two, we added some language.  Has to

15    do with unanimity concerning which firearm or firearms were

16    involved.  I have it as page 51.  It's a page entitled

17    "Firearm Defined."  And the last sentence we added and propose

18    to you, it says, "However, the jury need not be unanimous as

19    to which firearm or firearms, if any, were so possessed."

20         MR. FORRESTER:  Yes, Your Honor, that is true

21    because I'm looking at *U.S. v. Perry*, 560 F.3d 246.  There is

22    authority for that.

23         THE COURT:  Yes, sir.  All right.  Thank you.

24         Then on count five, the elements are stated on page

25    58.  And you'll notice, of course, that we added the last

1   sentence indicating that the second and third elements are

2   expressed either/or and that you could have a conviction if

3   either element or both are satisfied. Any comment about that?

4       MR. KAUFMAN: Your Honor, the only -- I had

5   discussed with counsel the possibility of instead of having

6   four stated elements with the or being between two and three,

7   the possibility of having three elements where what are

8   currently two and three becoming 2A or 2B. But I think that

9   may be more of an issue for the defense. I just wanted to

10   raise the fact that I did discuss it with counsel and I'll

11   defer. If that's what they would prefer, I would join them in

12   that. If they want it as is, that's fine for the United

13   States as well.

14       THE COURT: All right. It seems to me that what we

15   have here now is the same as if we called it 2A and 2B.

16       MR. CANALES: We're satisfied, Judge. We have no

17   issues of any kind.

18       THE COURT: All right. Thank you.

19       So we have -- we haven't had two more jurors come

20   in, have we?

21       CSO BROWN: No, we just have 12.

22       THE COURT: Have we heard from them at all?

23       THE CLERK: I think the lady may be trying to make

24   it. I have not reached Mr. Sharpe, juror 6. I've called his

25   house and no one answers. He lives in Statesville, so...

1          She might be on her way.  I don't know if you want
2   to wait a few more minutes or -- the two alternates are here.
3          THE COURT:  Yeah.
4          THE CLERK:  Jurors 2 and 6 are the ones that are
5   missing.
6          THE COURT:  All right.  The clerk informs me that
7   the two jurors missing, as I said before, are number 2 and
8   number 6.  So that would be Kathy Bowles.  She's number 2.
9   And she is from Alexander County.  Teacher assistant.  It says
10  Taylorsville, but she tells our clerk that she's from Vashti
11  which is near Taylorsville.  And we think she is likely on her
12  way, but we don't know positively.  She told us earlier that
13  she knew she could be here by 12:00 and we told her to come on
14  as soon as she could do so safely.
15         Now, juror number 6 is from Statesville.  My only --
16  that's Charles Mitche Sharpe.  And he's referred to as a
17  supervisor under the employment column.  But you may recall
18  him.  And we have had no contact from him and the clerk has
19  tried to call his numbers that we have for him and there's
20  been no response and no contact made.  So if that's -- the
21  parties are okay with using the alternates, we can go ahead on
22  that basis or we could wait a little longer to see if one or
23  both of these people show up.
24         MR. CANALES:  Your Honor, I would like to see if we
25  can give it a little bit longer given the weather.

 1          THE COURT:  All right, sir.  So we'll be in recess

 2    at this point.  We'll check with you again about 11:00 unless

 3    there's a development in the meantime.

 4          Let's talk about the possibility of forfeiture if

 5    there is a conviction.  Would it -- I believe the government

 6    has sent an email asking the parties whether they would want,

 7    assuming there is a conviction, for the forfeiture aspect of

 8    the indictment to go forward to the jury or to the court or by

 9    consent.

10          MR. CANALES:  May I have a second, Judge?

11          THE COURT:  Yes, sir, take the time you need.

12          (Counsel and defendant conferred.)

13          MR. CANALES:  Your Honor, if I may, Judge?

14          THE COURT:  Wait just one second.

15          MR. CANALES:  Yes, sir.

16          THE COURT:  Okay.  Madam Clerk.

17          THE CLERK:  I couldn't get an answer.

18          THE COURT:  Was that number 6?

19          MR. CANALES:  I left a message.

20          THE COURT:  Okay.  Thank you.

21          Yes, sir.

22          MR. CANALES:  Judge, after speaking to my client,

23    he's got a decision as to who he wants to decide about the

24    forfeiture, but I ask the court to ask him so he can express

25    his wishes to the court.

1           THE COURT:  All right.  Yes, sir.

2           MR. CANALES:  The court wants to know as far as the

3   issue of forfeiture, do you want the jury to decide what's

4   going to happen to the property, meaning the three real estate

5   properties, any -- or any and all properties that have been

6   subject to forfeiture, I believe there are four properties,

7   and also I believe there's the weapons as well, any real

8   estate or real -- any real property or personal property

9   that's the subject of forfeiture, the ones you have been given

10  notice on, do you want the judge or the jury to decide?

11          THE DEFENDANT (Interpreter):  The judge.

12          MR. CANALES:  And this is for -- you decided the

13  judge after you've had a conference with both me and -- me and

14  you.

15          THE DEFENDANT (Interpreter):  Yes.

16          MR. CANALES:  He'd like the judge to make the

17  decision on forfeiture, Your Honor.

18          THE COURT:  All right.  So I take it, Mr. Saldana,

19  you have talked to your attorneys about the possibilities

20  here.  One would be that you might essentially agree to

21  forfeiture by consent and that would be the end of it.  Or if,

22  on the other hand, you would rather have the jury decide the

23  matter, we could let the jury decide it.  Or we could have the

24  judge decide it.  And is that -- is that your understanding

25  that those are the options that are available here?

1    THE DEFENDANT (Interpreter):  Yes.

2    THE COURT:  And according to what your attorney just

3  said, is it your decision to let the judge decide that issue?

4    THE DEFENDANT (Interpreter):  Yes.

5    THE COURT:  All right, sir.  Very well.

6    MR. CANALES:  And for the record, so he can

7  understand as well, he's not consenting to lose the

8  properties, Judge.  Just make it clear to him.

9    THE COURT:  Very well.  Thank you.

10    All right.  So we'll be in recess until we have some

11  new jurors arrive, but we'll be back in session at 11:00.

12    (Brief recess at 10:39 a.m.)

13    (Jury not present.)

14    THE COURT:  All right.  Court is -- we're back in

15  open session and it appears the parties have agreed to go

16  forward with the first 12 jurors who are here which is

17  actually 11, missing number 6, and that the first alternate

18  would be put in place of number 6 and we'd go forward on that.

19    MR. CANALES:  That's correct, Judge.

20    MR. KAUFMAN:  Yes, Your Honor.

21    THE COURT:  All right.  And the -- if we hear from

22  number 6, we'll tell him to go on and not come in.

23    MR. CANALES:  Yes, Your Honor.

24    THE COURT:  For the record, we had a brief

25  conference in chambers addressing the issue of going forward

1  with the first 12 jurors minus the one missing and using

2  alternate number 1 and counsel agreed to do that.

3         Anything else to be put on the record about that

4  conference?

5             MR. FORRESTER:  No, Your Honor.

6             MR. KAUFMAN:  No, Your Honor.

7             THE COURT:  All right.  So we'll bring the jury in.

8  The court would give them the last part of the instructions

9  beginning at page 29 and then they'll begin deliberating.

10  Thank you.

11         May we have the jury, please.

12             THE CLERK:  Do you want juror 13 to sit in this

13  seat?

14             THE COURT:  Yes.

15         (Jury entered the courtroom.)

16             THE COURT:  Good morning, members of the jury.

17             THE JURY:  Good morning.

18             THE COURT:  Thank you all for coming here this

19  morning on less than ideal circumstances.  I hope you were

20  reasonably comfortable in negotiating the roads as they stand.

21         Now, then, we'll go ahead with the jury instructions

22  as I said we would do yesterday.  I'll read to you the charges

23  as we go through them one at a time, there are three charges,

24  the statutes under which the charges were brought and the

25  essential elements or essential facts of each charge that the

1  government would have to prove to have a conviction.

2          You will have a copy of the bill of indictment with

3  you in the jury room if you wish to consult with it at that

4  time.

5          The first count -- and I remind you, of course, that

6  an indictment is not evidence.  It's only an accusation.  The

7  first count alleges that from in or about 2001 (sic) to the

8  present, and the indictment was stamp filed August 2nd, 2013,

9  so that's what the present was at the time.

10          From in or about 2011 to the present, in Ashe

11  County, within the Western District of North Carolina, and

12  elsewhere, the defendant, Martin Martinez Saldana, did

13  knowingly and intentionally conspire and agree with each

14  other, and with other persons known and unknown to the grand

15  jury, to distribute and to possess with intent to distribute

16  controlled substances, that is, a mixture and substance

17  containing a detectable amount of methamphetamine, a Schedule

18  II controlled substance, all in violation of Title 21, Section

19  841(a)(1).

20          It further alleges that said offense involved at

21  least 50 grams of methamphetamine and at least 500 grams of a

22  mixture and substance containing a detectable amount of

23  methamphetamine.

24          Now, you'll note that the indictment charges that

25  the offense and each of these offenses will have been charged

1  as being committed on or about or within a certain date or

2  dates.  The proof need not establish with certainty the exact

3  date of the alleged offense.  It is sufficient if the evidence

4  in the case establishes beyond a reasonable doubt that the

5  offense in question was committed on a date reasonably near

6  the date or dates alleged.

7        In count one the defendant's charges come under

8  Section 846 which reads as follows:

9        Any person who conspires to commit any offense

10  defined in this subchapter shall be subjected to the same

11  penalties as those prescribed for the offense, the commission

12  of which was the object of the conspiracy.

13        Now, one of the offenses defined in the subchapter

14  reads as follows:

15        It shall be unlawful for any person knowingly or

16  intentionally to possess with intent to distribute or dispense

17  a controlled substance.

18        For you to find the defendant guilty of the offense

19  charged in count one, the government must prove the following

20  essential elements beyond a reasonable doubt before there

21  could be a conviction of this charge.

22        For your information, the first essential element

23  has to do with the existence of a conspiracy; the second with

24  the membership in a conspiracy; third, the alleged object of a

25  conspiracy; and lastly, the fourth one has to do with

1 defendant's knowledge.

2       More particularly, here are the essential elements
3 the government must prove beyond a reasonable doubt before
4 there could be a conviction.

5       A, that the conspiracy described in the bill of
6 indictment was an agreement or understanding between two or
7 more persons, that the conspiracy was willfully formed, and
8 that it was existing at the time alleged in the bill of
9 indictment.

10      Second, that at some time during the existence or
11 life of the conspiracy, the defendant knew the purpose of the
12 agreement or understanding and willfully joined the
13 conspiracy.

14      Third, that the object of the conspiracy was to
15 violate the Federal Controlled Substances Act by way of
16 possessing with the intent to distribute a Schedule II
17 controlled substance, at least 50 grams of methamphetamine, at
18 least 500 grams of a mixture and substance containing a
19 detectable amount of methamphetamine.

20      And lastly, that the defendant knew the substance
21 involved in the conspiracy as described in the bill of
22 indictment was a controlled substance.

23      So I'll give you some definitions of terms used in
24 the essential elements.  You would apply these definitions as
25 you consider the evidence.  And if I do not define certain

1  words, you would assign to them their ordinary, everyday

2  meanings.

3        A criminal conspiracy is an agreement or a mutual

4  understanding knowingly made or knowingly entered into by at

5  least two people to violate the law by some joint or common

6  plan or course of action.  A conspiracy is, in a very true

7  sense, a partnership in crime.  A conspiracy or agreement to

8  violate the law, like any other agreement or understanding,

9  need not be formal, written or even expressed directly in

10  every detail.

11        To prove the existence of a conspiracy or an illegal

12  agreement, the government is not required to produce a written

13  contract between the parties or even produce evidence of an

14  express oral agreement spelling out all the details of the

15  understanding.  Moreover, to prove that a conspiracy existed,

16  the government is not required to prove or show that all the

17  people named in the indictment as members of the conspiracy

18  were, in fact, parties to the original agreement, or that all

19  of the members of the alleged conspiracy were named or

20  charged, or that all of the people whom the evidence showed

21  were actually members of a conspiracy agreed to all of the

22  means or methods set out in the indictment.

23        Instead, the government must prove that the

24  defendant and at least one other person knowingly and

25  deliberately arrived at an agreement or understanding that

1  they, and perhaps others, would violate the law by some means
2  of common plan or course of action as alleged in count one.
3  It is proof of this conscious understanding and deliberate
4  agreement by the alleged members that should be central to
5  your consideration of the charge of conspiracy.  Unless the
6  government proves beyond a reasonable doubt that a conspiracy
7  as just explained actually existed, then you must acquit the
8  defendant of count one.

9       Now, if you should conclude that the conspiracy did
10  exist as alleged in the indictment, you should next determine
11  whether the defendant knowingly and willfully became a member
12  of the conspiracy.  Before the jury may find that the
13  defendant or any other person became a member of the
14  conspiracy as charged in count one, the evidence must show
15  beyond a reasonable doubt that defendant knew the purpose or
16  goal of the agreement or understanding and deliberately
17  entered into the agreement intending in some way to accomplish
18  the goal or purpose of this common plan.

19       If the evidence establishes beyond a reasonable
20  doubt that the defendant knowingly and deliberately entered
21  into an agreement to possess with the intent to distribute
22  methamphetamine, the fact that the defendant did not join the
23  agreement at its beginning, or did not know all the details of
24  the agreement, or did not play a major role in accomplishing
25  the unlawful goal is not important to your decision regarding

1  membership in the conspiracy.

2          On the other hand, certain things do not taken alone

3  make someone a member of a conspiracy.  Merely associating

4  with others and discussing common goals, mere similarity of

5  conduct between or among such persons, merely being present at

6  the place where the crime took place or is discussed, or even

7  knowing about criminal conduct does not by itself make someone

8  a member of a conspiracy.

9          If you concluded that the conspiracy did exist as

10  alleged and that defendant knowingly and willfully became a

11  member of it, you should next determine whether or not an

12  objective or goal of the alleged conspiracy was to possess

13  with the intent to distribute the drug as alleged.

14          Now, basically, what you are determining in this

15  regard is whether the conspirators intended to possess this

16  drug for their own use or whether they intended to possess the

17  drug for later sale or transfer.  Often it's possible to make

18  this determination from the quantity of drugs involved.  An

19  intent to distribute or transfer may be inferred, for example,

20  where the quantity of drugs discovered was greater than that

21  which would be used for personal consumption.  Ultimately, the

22  government must prove beyond a reasonable doubt that a

23  conspiracy was willfully formed and had as its purpose the

24  possession with intent to distribute methamphetamine.  You

25  should make your determination as to the purpose of the

1  conspiracy from all the evidence presented.

2         Keep in mind that there may be a conviction as to

3  this conspiracy count even though the conspirators may not

4  have succeeded in accomplishing their common object or purpose

5  in some way or ways and, in fact, may have failed in

6  accomplishing it.

7         I'll define the word "possession."  It comes up in

8  count one and several -- a couple of the other counts also.

9  Here it comes up where the government alleges a conspiracy to

10 possess methamphetamine with the intent to distribute.

11        The word "possess" means to own or exert control

12 over.  The word "possession" can take on several but related

13 meanings.

14        The law recognizes two kinds of possession, actual

15 possession and constructive possession.  A person who

16 knowingly has direct physical control over a thing at a given

17 time is then in actual possession of it.  A person who,

18 although not in actual possession, knowingly has both the

19 power and the intention at a given time to exercise dominion

20 or control over a thing either directly or through another

21 person or persons is then in constructive possession of it.

22        The law also recognizes that possession may be sole

23 or joint.  If one person alone has actual or constructive

24 possession of a thing, then possession is sole.  If two or

25 more persons share actual or constructive possession of a

1  thing, then possession is joint.

2  You may find that the element of possession as that

3  term is used in these instructions is present if you find

4  beyond a reasonable doubt that the possession in question was

5  actual or constructive possession, either alone or jointly

6  with others.

7  The phrase "with intent to distribute" means to have

8  in mind or to plan in some way to deliver or transfer

9  possession or control over a thing to someone else.  In

10  attempting to determine the intent of any such person, you may

11  take into consideration all the facts and circumstances shown

12  by the evidence received in the case concerning that person.

13  In determining a person's intent to distribute

14  controlled substances, you may consider, among other things,

15  the purity of the controlled substance, the quantity of it,

16  the presence or absence of equipment used in the processing or

17  sale of controlled substances, and the presence or absence of

18  large amounts of cash or weapons.

19  For you to find the defendant guilty of the charge

20  in count one, the government must prove beyond a reasonable

21  doubt the third essential element along with the others, but

22  the third one is that the object of the conspiracy was to

23  possess a controlled substance with the intent to distribute

24  the controlled substance as alleged.

25  Now, defendant is charged in count one with

1  conspiracy to possess with intent to distribute

2  methamphetamine.  You are instructed as a matter of law that

3  methamphetamine is a Schedule II controlled substance.

4          Next, you should turn your attention to the issue of

5  the type and quantity of illegal drugs involved.  As to the

6  drug charged in count one, you must determine if the substance

7  was methamphetamine.  The parties have stipulated or agreed

8  that the material seized in this case was tested by an expert

9  forensic chemist and determined to be, in fact,

10 methamphetamine.

11         You will be provided with a -- you'll have a special

12 verdict sheet that addresses the drug and quantity to be

13 considered if you reach that issue.

14         Now, determining the drug quantity involved in the

15 conspiracy -- or rather, after determining the quantity

16 involved in the conspiracy as a whole, you are also asked to

17 determine the drug quantity attributable to this defendant.

18 In order to determine the quantity of drugs attributable to an

19 individual co-conspirator, you must consider the scope of

20 criminal activity the defendant agreed to jointly undertake as

21 well as the conduct of other co-conspirators that was in

22 furtherance of the conspiracy and reasonably foreseeable to

23 the defendant, if any.

24         The government has the burden of proof on this issue

25 and must establish beyond a reasonable doubt the quantity of

drugs that this particular defendant should be held responsible for. Your decision as to drug quantity for the defendant must be unanimous.

I will now explain the applicable principles in more detail.

As I said, you consider the scope of criminal activity the defendant agreed to jointly undertake by becoming a member of the conspiracy. Because the alleged offense may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by defendant is not necessarily the same as the scope of the entire conspiracy. This makes sense when you consider the different roles that members of the conspiracy may have in any given case. Generally, in considering what criminal activity an individual defendant may have agreed to jointly undertake, you will look to the scope of the specific conduct and objections -- or excuse me, objectives or goals, aims or purposes embraced by the defendant's agreement.

Next you must consider the conduct of defendant's co-conspirators, that is, other members of the conspiracy. Whether any other co-conspirator's actions may be attributable to this defendant depends upon the following two factors:

One, whether the co-conspirator's actions were in furtherance of the conspiracy; and

Secondly, whether the co-conspirator's actions were

1  reasonably foreseen as necessary or natural consequences of
2  the co-conspirator's actions.

3       A co-conspirator's actions are considered to be in
4  furtherance of the conspiracy if the actions occurred during
5  the commission of the offense of conviction in preparation for
6  that offense or in the course of attempting to avoid detection
7  or responsibility for that offense.

8       In order to hold an individual defendant or
9  co-conspirator responsible for the acts of other members of
10 the conspiracy, the acts must be reasonably foreseen -- or
11 foreseeable, rather, to the defendant.

12      Acts are reasonably foreseeable if they can be
13 reasonably foreseen as a necessary or natural consequence of
14 the conspiracy.

15      In evaluating whether the actions of another
16 co-conspirator were reasonably foreseeable as a necessary or
17 natural consequence of the conspiracy, you may consider the
18 scope of the agreement between the specific individual
19 defendant and the co-conspirator whose actions or conduct you
20 are considering.

21      Keep in mind that use of the word "reasonably"
22 contemplates that you will consider what a reasonable person
23 in the same or similar circumstances would have understood the
24 natural consequences to be.  In other words, you're not to
25 consider the subjective beliefs of the defendant if you find

1  them to be unreasonable.

2           The government must show beyond a reasonable doubt

3  that the defendant participated in the alleged conduct

4  knowingly.  That could be referred to as the mental element of

5  this offense.

6           The word "knowingly" as used in these instructions

7  to describe the alleged state of mind of the defendant means

8  that he was conscious and aware of his actions, realized what

9  he was doing or what was happening around him, and did not act

10 because of ignorance, mistake or accident.

11          Knowledge may be proved by defendant's conduct and

12 by all the facts and circumstances surrounding the case.

13          The purpose of adding the element knowingly is to

14 ensure that no one will be convicted due to mistake or

15 accident or other innocent reason.

16          The term "willfully" as used in these instructions

17 to describe the alleged state of mind of the defendant means

18 that he knowingly performed an act or failed to act

19 deliberately and intentionally or on purpose as contrasted

20 with accidentally, carelessly, or unintentionally.

21          Now, evidence has been received in this case with a

22 certain -- excuse me, that a certain person or persons who are

23 alleged to have been co-conspirators with the defendant have

24 done or said things during the existence or life of the

25 alleged conspiracy in order to further or advance its goals.

Such acts and statements of alleged co-conspirators may be considered by you in determining whether or not the government has proven the charges in count one against the defendant.

Since these acts may have been performed or these statements may have been made outside the presence of the defendant and even done or said without his knowledge, these acts or statements should be examined by you with particular care before considering them against the defendant. If you find that the acts and statements were in furtherance of the goals of the conspiracy and you find that the defendant was or became a member of that conspiracy, you may consider these acts or statements as evidence against the defendant.

So in summing up as to count one, I charge you that if you find from the evidence beyond a reasonable doubt that on or about the dates alleged, the conspiracy described in count one was an agreement or understanding between two or more persons, That the conspiracy was willfully formed and that it was existing at the time alleged;

Second, that at some time during the existence or life of the conspiracy, the defendant knew the purpose of the agreement or understanding and willfully joined the conspiracy;

Third, that the object of the conspiracy was to violate the Federal Controlled Substances Act by way of possessing with the intent to distribute a Schedule II

1 controlled substance, that at least 50 grams of

2 methamphetamine and at least 500 grams of a mixture and

3 substance containing a detectable amount of methamphetamine;

4 and

5    Lastly, that the defendant knew the substance

6 involved in the conspiracy was a controlled substance, and if

7 you so find, then it would be your duty to return a verdict of

8 guilty as to count one.

9    If you do not so find or if you have a reasonable

10 doubt as to one or more of the essential elements of the crime

11 charged, then it would be your duty to give the defendant the

12 benefit of that doubt and return a verdict of not guilty as to

13 count one.

14    Now, count two alleges as follows in the indictment:

15    That on or about December 12, 2012, in Ashe County,

16 within the Western District of North Carolina, and elsewhere,

17 the defendant, during and in relation to a drug trafficking

18 crime, that is, conspiracy to distribute and to possess with

19 intent to distribute methamphetamine, in violation of

20 Title 21, U.S. Code, Section 846 as charged in count one for

21 which he may be prosecuted in a court of the United States,

22 and in furtherance of such drug trafficking crime did possess

23 firearms, and did aid and abet that offense.  And that's

24 alleged in violation of Sections 924(c) and 2.

25    So count two, that is, the charging statute, 924(c),

1    reads as follows:

2         Any person who, during and in relation to a drug

3    trafficking crime for which the person may be prosecuted in a

4    court of the United States or who, in furtherance of any such

5    crime, possesses a firearm, shall be guilty of an offense

6    against the United States.

7         Now, for purposes of this subsection, the term "drug

8    trafficking crime," means any felony punishable under the

9    Controlled Substances Act and includes the charge of

10   conspiracy in count one of this indictment.

11        Now, Section 2, the aiding and abetting statute, is

12   also alleged in count two.  And Section 2 reads:

13        Whoever aids, abets, counsels, commands, induces or

14   procures its commission is punishable as a principal.

15        So for you to find the defendant guilty of the

16   offense charged in count two, the government must prove the

17   following essential elements or facts beyond a reasonable

18   doubt before there could be a conviction:

19        And it alleges that on or about the date alleged,

20   the defendant committed the underlying drug trafficking crime

21   charged in the first superseding bill of indictment, that

22   would be count one.  So based on that, if you -- if it turns

23   out that you found the defendant not guilty of count one,

24   then, of course, he would be not guilty of count two because

25   he wouldn't have committed the underlying drug trafficking

1    crime charged in the superseding bill of indictment.  That's

2    the first essential element, that there would have been a

3    conviction under count one.

4           Second, the second element is that defendant

5    possessed one or more firearms in furtherance of that drug

6    trafficking crime.

7           Or that defendant otherwise aided, abetted,

8    counseled, commanded, induced or procured the commission of

9    this offense.  I'll define aiding and abetting for you in just

10   a moment.

11          And lastly, the fourth essential element, that

12   defendant did all such acts knowingly, willfully, and

13   unlawfully.

14          Now, the term "firearm" in this count means any

15   weapon which will be or is designed to or may readily be

16   converted to expel a projectile by the action of an explosion

17   and includes any shotgun.

18          The parties stipulate or agree that the four

19   firearms described in the first superseding bill of indictment

20   and recovered on December 12, 2012, from 148 Ervin Houck

21   Drive, West Jefferson, North Carolina, satisfy the statutory

22   definition of firearm for purposes of count two.

23          Firearms, which is, of course, the plural of that

24   noun, references one or more firearms.  In other words, the

25   jury need only find unanimously that the defendant possessed

1 one or more firearms in furtherance of the drug trafficking
2 crime described in count one. However, the jury need not be
3 unanimous as to which firearm or firearms, if any, were so
4 possessed.

5 Now, the term or phrase "in relation to an offense"
6 means that there must be a connection between the defendant,
7 the firearm, and the drug trafficking offense so that the
8 presence of the firearm was not accidental or coincidental,
9 but facilitated the crime by serving some important function
10 or purpose of the criminal activity.

11 Defendant is charged with possession of a firearm in
12 furtherance of a drug trafficking crime. In order to find the
13 defendant guilty of this charge, the government must prove the
14 following two elements beyond a reasonable doubt:

15 That the defendant knowingly possessed a firearm.

16 And second, that its possession promoted, furthered,
17 advanced, or helped the commission of a drug trafficking
18 crime, specifically the one in count one.

19 In order for defendant to possess a firearm, he need
20 not use, brandish or actively employ the firearm. Instead,
21 the firearm -- or rather, the defendant need only exercise
22 control or authority over the firearm at a given time. The
23 mere presence of a firearm at the scene of a drug trafficking
24 crime will not suffice.

25 Further, such possession must be in furtherance of

1  the alleged crime.  In other words, defendant's possession of

2  a firearm must promote or advance the alleged drug trafficking

3  in some way.

4        Factors that may be considered in determining

5  whether possession is in furtherance of a drug trafficking

6  crime include the type of drug activity that is being

7  conducted, the accessibility of the firearm, the proximity of

8  the firearm to the defendant, the type of weapon, and the time

9  and circumstances under which the firearm is found.

10        The term "drug trafficking crime" means an offense

11  that's a felony and involves the distribution, manufacture or

12  importation of any controlled substances.  The offense

13  described or alleged in count one, to wit, conspiracy to

14  possess with intent to distribute a controlled substance is a

15  drug trafficking crime.

16        The law holds that one who knowingly aids, abets,

17  counsels, commands, induces or procures the commission of a

18  crime is just as criminally responsible as the one who

19  actually commits it.  So to be convicted of count two under

20  this aiding and abetting theory, the government is not

21  required to prove participation at every stage of an illegal

22  venture.  However, the government is required to prove that

23  the defendant knowingly associated himself with and

24  participated in the criminal venture.

25        In other words, you should only find the defendant

1  guilty on count two if the evidence proved beyond a reasonable
2  doubt that he knowingly participated in the principal criminal
3  intent.

4      Finally, under the law it's not necessary that the
5  principal, that would be the one who actually committed the
6  crime, be convicted for you to find the defendant guilty of
7  aiding and abetting.

8      So summing up on count two, if you find from the
9  evidence beyond a reasonable doubt that on or about the date
10 alleged, the defendant committed the underlying drug
11 trafficking crime charged in the first superseding bill of
12 indictment, that's count one;

13     Second, defendant possessed one or more firearms in
14 furtherance of that drug trafficking crime;

15     Or that defendant otherwise aided, abetted,
16 counseled, commanded, induced or procured the commission of
17 this offense; and

18     Lastly, that the defendant did all such acts
19 knowingly, willfully, and unlawfully, then it would be your
20 duty to return a verdict of guilty as charged in count two.

21     However, if you do not so find or if you have a
22 reasonable doubt as to one or more of the essential elements
23 of the crime charged, then it would be your duty to give the
24 defendant the benefit of that doubt and return a verdict of
25 not guilty.

1          Now, lastly, the final charge to be considered is
2     numbered 5 in this particular indictment.  It's issue three on
3     your verdict sheet which you'll see when you look at the
4     verdict sheet.  But this final charge alleges that defendant
5     received or possessed a firearm made in violation of the
6     National Firearms Act, which I'll call The Act, and that the
7     specific firearm was not registered as belonging to the
8     defendant as required by law.
9          So count five reads as follows:
10         It alleges that on or about December 12, 2012, in
11    Ashe County, within the Western District of North Carolina,
12    and elsewhere, defendant, Martin Martinez Saldana, that he
13    knowingly received and possessed a firearm, to wit, a
14    Harrington and Richardson Arms 12 gauge shotgun, serial number
15    A62823, made in violation of the provisions of the National
16    Firearms Act and not registered to him in the National
17    Firearms Registration and Transfer Record, in violation of
18    Title 26, United States Code.  And there are four different
19    sections alleged there.
20         Now, one of those sections is 8 -- excuse me,
21    5841(e) which reads:
22         A person possessing a firearm registered as required
23    by this section shall retain proof of registration which shall
24    be made available to the Secretary upon request.
25         And the next two sections provide:

1        It shall be unlawful for any person to receive or
2   possess a firearm made in violation of the provisions of this
3   chapter or to receive or possess a firearm which is not
4   registered to him in the National Firearms Registration and
5   Transfer Record.
6        So, again, to the essential elements.  If you find
7   the defendant -- or to find him, rather, guilty of the charge
8   in count five, the government must prove these essential
9   elements beyond a reasonable doubt:
10       That on or about the date alleged, first, defendant
11  knew he had a firearm in his possession.
12       Second, the firearm possessed by the defendant was a
13  shotgun made in violation of the provisions of the National
14  Firearms Act, namely, a Harrington and Richardson Arms 12
15  gauge shotgun, serial number A62823, a short-barreled shotgun
16  of less than 18 inches in barrel length.
17       Or that the firearm was -- and this is or.  That the
18  firearm was not registered to him in the National Firearms
19  Registration and Transfer Record.
20       And lastly, that the firearm was in operating
21  condition or could readily have been put into operating
22  condition.
23       You notice the second and third elements are
24  expressed as either/or.  Defendant may be convicted under
25  count five if either element two or three, or both, are

1   satisfied along with elements one and four.  The verdict sheet
2   will address that issue as you reach it.
3        You'll recall I already defined "possession" and the
4   mental element of "knowingly."  Those definitions apply here
5   as well.
6        Now, for purposes of this offense brought under the
7   National Firearms Act, the term "firearm" means something
8   different in count five than the previous definition I gave
9   you about count two.  So when you deliberate on count two, you
10  use that definition of firearm I already gave you.  But in
11  five you would use the following definition.  It means only
12  certain types of firearms, including a shotgun having a barrel
13  of less than 18 inches in length.
14       The term "shotgun" means a weapon designed or
15  redesigned, made or remade and intended to be fired from the
16  shoulder and designed or redesigned and made or remade to use
17  the energy of an explosive in a fixed shotgun shell to fire
18  through a smooth bore either a number of projectiles, that
19  would be ball shot, or a single projectile for each pull of
20  the trigger.  It shall include any such weapon which may be
21  readily restored to fire a shotgun shell.
22       The National Firearms Registration and Transfer
23  Record as referred to in these instructions is a central
24  registry of certain firearms, including shotguns having a
25  barrel of less than 18 inches of length in the United States

1  which are not in the possession or under the control of the
2  United States.  The National Firearms and Transfer Record is
3  required by statute to include an identification of the
4  firearm, the date of registration, and an identification and
5  address of the person entitled to possess the firearm.

6         In this case the parties stipulate or agree that the
7  Harrington and Richardson Arms 12 gauge shotgun, serial number
8  A62823 described in the first superseding bill of indictment
9  and recovered on December 12, 2012, from 148 Ervin Houck
10  Drive, West Jefferson, North Carolina, is a short-barreled
11  shotgun of less than 12 inches in barrel length and,
12  therefore, was made in violation of the provisions of the
13  National Firearms Act, and that the Harrington and Richardson
14  Arms 12 gauge shotgun was not registered to defendant Saldana
15  in the National Firearms Registration and Transfer Record as
16  would be required by law if he possessed it.

17         So in summing up on count five, I charge you that if
18  you find from the evidence beyond a reasonable doubt that on
19  or about the date alleged, defendant knowingly possessed the
20  firearm described in count five, namely, that Harrington and
21  Richardson Arms 12 gauge shotgun;

22         Second, that the firearm possessed by defendant was
23  a shotgun made in violation of the provisions of the National
24  Firearms Act, namely, the Harrington and Richardson Arms 12
25  gauge shotgun, a short-barreled shotgun of less than 18 inches

1  in barrel length, or that the firearm was not registered to

2  the defendant in the National Firearms Registration and

3  Transfer Record; and

4      Lastly, that the firearm was in operating condition

5  or could readily have been put into operating condition, and

6  if you so find, then it would be your duty to return a verdict

7  of guilty as charged in count five.

8      As I already explained, defendant may be convicted

9  under count five if element two or three, or both, are

10 satisfied.

11     However, if you do not so find or if you have a

12 reasonable doubt as to one or more of the essential elements

13 of the crime charged, then it will be your duty to give the

14 defendant the benefit of that doubt and return a verdict of

15 not guilty as to count five.

16     Now, then, you've heard the evidence.  You've heard

17 the arguments of counsel.  It's your duty to remember the

18 evidence whether it was called to your attention or not.  And

19 if your recollection of the evidence should differ from that

20 of one or more of the attorneys, you are to rely solely on

21 your recollection of the evidence in your deliberations.

22     I haven't reviewed the contentions of the parties,

23 but it's your duty to consider along with the evidence also

24 the arguments, the contentions and positions urged by the

25 attorneys in their speeches to you, and any other contention

1  that arises from the evidence and to weigh them all in the
2  light of your common sense and as best you can determine the
3  truth of this matter.

4          The law, as indeed it should, requires the presiding
5  judge to be impartial.  So you should not assume from anything
6  I may have said or done during the course of the trial that I
7  have any opinion concerning any of the issues before you in
8  this case.

9          I instruct you that a verdict is not a verdict until
10 all 12 jurors agree unanimously as to what your decision shall
11 be.  You may not render a verdict by majority vote or any
12 other voting mechanism aside from a unanimous verdict of 12.

13         The court suggests that as soon as you reach the
14 jury room before beginning deliberations, you select one of
15 your members to serve as the foreperson.  This individual has
16 the same vote as the rest of the jurors but simply serves to
17 preside over the discussions.  Once you begin deliberating, if
18 you need to communicate with the court, the foreperson will
19 send a written message to me by knocking on the door and
20 handing it to the marshal.  However, you're not to tell me how
21 you may stand numerically as to your verdict.  For instance,
22 should you be split in your voting at any particular time, you
23 would not tell me the specific numbers of division in your
24 note.

25         We use a verdict sheet.  It's simply the written

1  notice of the decision that you reach in this case. As soon
2  as you reach a verdict, you'll return to the courtroom and
3  your foreperson will, on request, hand the verdict sheet to
4  the clerk. There are places on the verdict sheet for the
5  foreperson to enter the verdict as to the various counts and
6  certain questions that are asked of you. And the foreperson
7  will fill it out and sign it and date it.

8         Now, during the trial a number of items were
9  received into evidence as exhibits. You'll have access to
10  virtually all of the trial exhibits through the JERS program
11  that I believe the clerk has already described to you that is
12  available to you in the jury room during deliberations.

13         During your deliberations you must not communicate
14  with or provide any information to anyone by any means about
15  this case. As I have said before, you are still bound by my
16  instructions that you not use any electronic device or media,
17  cell phone, smart phone, any of those things, any computer
18  device, or any of the electronic means of communication to
19  communicate any information about this case or conduct any
20  research about it until I have accepted your verdict.

21         Now, if you need a break during your deliberations,
22  you may do that in the jury room, or if it's a smoke break,
23  then outside the jury room escorted by a marshal, but you must
24  not deliberate during a break unless all 12 of you are
25  together. If not together, then do not talk about the case

1    until you are all back together.

2         Would either side request a sidebar concerning any

3    of these instructions at this time?

4         MR. KAUFMAN:  No, Your Honor.

5         MR. CANALES:  No, Your Honor.

6         THE COURT:  All right.  Thank you.

7         Members of the jury, you may now take the case and

8    see how you will find.

9         (Jury exited the courtroom at 11:29 a.m.)

10        THE COURT:  I'd ask the alternate if you'll stay

11   with us for a moment.  I have instructions for you.  Do you

12   have any belongings in the jury room?

13        JUROR NO. 14:  Yes.

14        THE COURT:  You can either have them with you or

15   wait until later.  If you want to get them now, you may do

16   that.

17        THE CLERK:  If you want to get a drink and something

18   to eat too, you can do that.

19        THE COURT:  Thank you very much for continuing to be

20   available to us should one of these jurors fall out for one

21   reason or another.  So keep an open mind about the case.  And

22   if we have any other proceedings -- and as we have any more

23   proceedings, we'll bring you right in with the rest of the

24   jurors.

25        JUROR NO. 14:  Okay.  Thank you.

1          THE COURT:  Thank you.

2          (The alternate exited the courtroom.)

3          THE COURT:  Okay.  The record will show that there

4   were no further requests or objections made about the

5   instructions as given.  We'll be in recess, then, pending a

6   verdict.

7          (Recess pending a verdict at 11:32 a.m.)

8                          *****

9          (Court resumed at 1:11 p.m.)

10          THE COURT:  All right.  Members of the jury, who

11   will be speaking for the jury, please?

12          JUROR NO. 5:  We didn't come to --

13          THE COURT:  Okay.  I understand the jury wants to go

14   to lunch.

15          JUROR NO. 5:  Yes.

16          THE COURT:  Okay.  So we'll let you do that.  And

17   we'll make it an hour.  But the way it works is -- that would

18   be -- let's see, it's 1:15.  That would make it 2:15.  But if

19   all of you are back in the jury room, whenever that is, if

20   it's, you know, 15 minutes short of an hour or whatever it is,

21   start deliberating.  You won't need to come back into court

22   and hear anything further from us.  Thank you very much.  Stay

23   dry.

24          (Jury exited the courtroom.)

25          (Lunch recess at 1:20 p.m.)

```
 1                              *****
 2              (Court resumed at 2:46 p.m.)
 3              THE COURT:  Okay.  Did the jury announce that it has
 4   a verdict?
 5              THE CSO:  They did, Your Honor.
 6              THE COURT:  Are the parties ready to receive the
 7   verdict?
 8              MR. KAUFMAN:  Yes, Your Honor.
 9              MR. CANALES:  Yes, Your Honor.
10              MR. FORRESTER:  Yes, Your Honor.
11              THE COURT:  May we have the jury.
12              (Jury entered the courtroom.)
13              THE COURT:  All right.  The marshal tells me the
14   jury has a verdict; is that correct?
15              JUROR NO. 5:  Yes.
16              THE COURT:  And did you enter the verdict on the
17   verdict sheet and sign it and date it?
18              JUROR NO. 5:  Yes.
19              THE COURT:  All right.  Was it unanimous as to all
20   the answers you gave on the verdict sheet?
21              JUROR NO. 5:  Yes, sir.
22              THE COURT:  All right.  Thank you.
23              Madam Clerk.
24              (The verdict sheet was tendered to the court.)
25              THE COURT:  All right.  Madam Clerk, I would ask you
```

1    to publish the verdict.

2              Members of the jury, please listen up as the clerk

3    announces the verdict because in just a moment you'll be asked

4    if that is and remains your verdict.

5              THE CLERK:  Members of the jury, you have found as

6    follows:

7              As to defendant, Martin Martinez Saldana, one --

8    count one.  As to count one, we find the defendant, Martin

9    Martinez Saldana, guilty.

10             1A, concerning the issue of quantity only, do you,

11   the jury, find that the government has proven beyond a

12   reasonable doubt that the quantity of actual methamphetamine,

13   its salts, isomers, and salts of its isomers which is

14   attributable to defendant is 50 grams or more?  Yes.

15             1C, concerning the issue of quantity only, do you,

16   the jury, find that the government has proven beyond a

17   reasonable doubt that the quantity of a mixture and substance

18   containing a detectable amount of methamphetamine, its salts,

19   isomers or salts of its isomers which is attributable to the

20   defendant is less than 500 grams but at least 50 grams?  Yes.

21             Count two.  As to count two, we, the jury, find the

22   defendant, Martin Martinez Saldana, not guilty of possession

23   of one or more firearms in furtherance of a drug trafficking

24   crime.

25             Count five.  As to count five and the charge that

1  defendant, Martin Martinez Saldana, was in receipt or

2  possession of a firearm made in violation of the National

3  Firearms Act, we, the jury, find the defendant guilty.

4           3B, as to count five and the charge that the

5  defendant, Martin Martinez Saldana, was in receipt or

6  possession of a firearm not registered as belonging to the

7  defendant in the National Firearms Registration and Transfer

8  Record, we, the jury, find the defendant guilty.

9           THE COURT:  Thank you, Madam Clerk.

10          Would there be anything for the jury before they are

11  released?

12          THE CLERK:  Do you want me to poll the jury?

13          THE COURT:  Yes, ma'am.

14          THE CLERK:  Juror number 1, was this your verdict;

15  is this still your verdict?

16          JUROR NO. 1:  Yes, ma'am.

17          THE CLERK:  Juror number 2, was this your verdict;

18  is this still your verdict?

19          JUROR NO. 2:  Yes.

20          THE CLERK:  Juror number 3, was this your verdict;

21  is this still your verdict?

22          JUROR NO. 3:  Yes.

23          THE CLERK:  Juror number 4, was this your verdict;

24  is this still your verdict?

25          JUROR NO. 4:  Yes.

1           THE CLERK:  Juror number 5, was this your verdict;
2    is this still your verdict?
3           JUROR NO. 5:  Yes.
4           THE CLERK:  Juror number 6, was this your verdict;
5    is this still your verdict?
6           JUROR NO. 6:  Yes.
7           THE CLERK:  Juror number 7 --
8           JUROR NO. 7:  Yes.
9           THE CLERK:  -- was this your verdict; is this still
10   your verdict?
11          Juror number 8, was this your verdict; is this still
12   your verdict?
13          JUROR NO. 8:  Yes.
14          THE CLERK:  Juror number 9, was this your verdict;
15   is this still your verdict?
16          JUROR NO. 9  yes.
17          THE CLERK:  Juror number 10, was this your verdict;
18   is this still your verdict?
19          JUROR NO. 10:  Yes.
20          THE CLERK:  Juror number 11, was this your verdict;
21   is this still your verdict?
22          JUROR NO. 11:  Yes.
23          THE CLERK:  Juror number 12, was this your verdict;
24   is this still your verdict?
25          JUROR NO. 12:  Yes.

1          THE COURT:  Thank you, Madam Clerk.

2          Anything further as far as counsel are concerned?

3          MR. KAUFMAN:  No, Your Honor.

4          MR. FORRESTER:  No, Your Honor.

5          THE COURT:  Members of the jury, I want to thank you

6     very much for your participation in the case.  Also, the

7     alternate who was ready and available had they been needed to

8     come in and substitute for a juror.

9          If you have any questions about your jury service,

10    feel free to stop by the clerk's office on the third floor as

11    you go out or call the telephone number that you've been

12    given.

13         Again, with our appreciation, you are free to go at

14    this time.

15         (Jury exited the courtroom.)

16         THE COURT:  Okay.  The court will propose to go

17    ahead and look at the forfeiture issue.

18         MR. CANALES:  Yes, Your Honor.

19         THE COURT:  In reviewing some of the law that

20    pertains to this, the defendant has consented that the court

21    decide the issue of forfeiture.  It appears that the

22    properties the government seeks to forfeit are four parcels of

23    real property and I take it the weapons and ammunition; is

24    that correct?

25         (Counsel and the agent conferred.)

1          MR. KAUFMAN:  Your Honor, I'm not a hundred percent

2    sure whether the administrative process has been completed for

3    the firearms so in an abundance of caution, I would ask that

4    the court make a ruling on that as well.  I believe that the

5    court may have made that ruling with regard to co-defendants

6    who have already entered their consent order of judgment of

7    forfeiture.

8          With regard to the four properties, I'd note that we

9    have that revised bill of particulars.  That is document 67.

10   My understanding from AUSA Tom Ascik is that I'm supposed to

11   also submit as evidence for the court to consider the actual

12   deeds for the properties.  And if I may do so, I think that

13   our last exhibit number was 3 -- Ms. Johnson?

14          THE CLERK:  33, I think -- no, it's 35.

15          MR. KAUFMAN:  35.  So I'll be marking the first deed

16   as 36 which is for 148 and 178 Ervin Houck Road -- I'm sorry,

17   Ervin Houck Drive.  The next one will be Exhibit 37 which is

18   for 212 Ervin Houck Drive.  And the last one is 38 which will

19   be for that property that during the trial, Your Honor, was

20   referred to as PIN 131.  The full identification is property

21   ID number 13194-27.

22          So, Your Honor, we'd move to admit for Your Honor's

23   consideration Government's Exhibit 36 through 38.

24          MR. CANALES:  Your Honor, may I address the court --

25          THE COURT:  Yes, sir.

1    MR. CANALES: -- please?

2    Judge, I believe the government is asking this

3 honorable judge to make a decision as to the forfeiture now.

4 I would ask the court to defer any ruling on the forfeiture

5 until the date of sentencing. That's the common practice that

6 I've been exposed to where, you know, usually any issue about

7 forfeiture is done in conjunction with the sentencing, Your

8 Honor. I mean, it's all going to be done.

9    I would ask the court to, if you could -- and again,

10 I'm working off of memory, Judge. My understanding is that

11 the notice of forfeiture was as to the real properties but not

12 as to the weapons. That's my understanding. And if I'm

13 mistaken, I would like the government to correct me. But I

14 believe that the notice that my client received for forfeiture

15 was only as to the properties, not the weapons. In that case,

16 Judge, then my client has to be properly served or notified of

17 any forfeiture proceedings having to do with the weapons, Your

18 Honor.

19    THE COURT: Well, when you say your client received

20 notice, are you referring to page 3 of the bill of indictment?

21    MR. CANALES: Well, he received -- well -- that's

22 correct, Judge. You're right. But I -- I was -- there was a

23 separate proceeding on the real estate issues. I guess that's

24 the distinction I was trying to make, Your Honor.

25    THE COURT: Well, you understand that the evidence

1  from trial is before the court.

2          MR. CANALES:  Yes, sir.

3          THE COURT:  And now we have Government's Exhibits

4  36, 37, and 38 before the court.  The parties could offer

5  testimony if appropriate.  But you understand that third-party

6  interests in the property are still protected even if the

7  court were to find probable cause and order forfeiture as to

8  the defendant's interest.  You understand that.

9          MR. CANALES:  Yes, Your Honor.  I just thought that

10  maybe we could do everything on sentencing day.  Obviously,

11  the court's --

12          THE COURT:  Well, any objection by the government?

13          MR. KAUFMAN:  We don't have an objection on the

14  timing issue, Your Honor.

15          THE COURT:  All right.  That would give you an

16  opportunity to consider your presentation in that regard.

17          MR. CANALES:  Yes, Your Honor.

18          THE COURT:  But I would note for the record that the

19  property description as contained in the notice of forfeiture

20  and finding of probable cause passed on by the grand jury on

21  page 4 of the indictment is fairly inclusive.

22          MR. CANALES:  Yes, Your Honor.

23          THE COURT:  And I would further mention that the --

24  some of the law that appears to apply would be that the

25  property forfeitable would be that which was used or intended

1  to be used to commit or facilitate the violation in count one.

2  That the government needs to prove its case by the

3  preponderance of the evidence. That the government must

4  establish a nexus between the property for which it is seeking

5  forfeiture and the crime in count one. And the court may

6  consider any evidence offered by the parties in deciding the

7  issue. That third-party interests, that is, anyone other than

8  the defendant who may have an interest in the property would

9  have such person's interest to consider at a later time; and

10  likewise, as to the issue of excessive punishment if that is

11  properly raised by the defendant.

12  And that certain law of the circuit provides that

13  the substantial connection of the crime to the property that

14  is required is not a particularly high hurdle according to

15  cases cited by the government. And that, moreover, property

16  that is accused in any manner or part may warrant forfeiture

17  of the whole. And that's all I would say about that at this

18  point.

19  Okay. Now, speaking to Mr. Saldana. The jury

20  having decided as it did in finding you guilty on counts one

21  and five of the bill of indictment, the next proceeding that

22  would take place in the matter would be the sentencing

23  hearing, and forfeiture will be taken up at that time and

24  sentencing. At least 35 days before the time of that hearing,

25  you will receive a copy of the presentence report as will your

1   attorneys.  And moreover, you'll be given an opportunity to
2   interview with the probation officer, and your attorneys may
3   be with you if such an interview takes place if you wish.  But
4   the idea is that you will be able to look over the presentence
5   report and make sure it's accurate.  And you may object to it
6   if it is not.  And you may offer evidence at the time of the
7   sentencing hearing in support of any objections to the
8   presentence report.
9           Anything further from the parties that you would
10  like the court to address at this point?
11          MR. KAUFMAN:  No, Your Honor.
12          MR. FORRESTER:  Well, maybe not address, but ask for
13  the court's indulgence.
14          Your Honor, can I get read the -- I think it was 1C
15  again or maybe even just a copy of the verdict form?  I know I
16  can get it online, but my memory, the responsibility was 50 to
17  under 500 grams if memory serves me correct.  That's more of a
18  curiosity.
19          THE COURT:  Why don't you just come up and take a
20  look at the original.
21          MR. CANALES:  May I too, Judge?
22          THE CLERK:  It was 1E which was -- 1E between
23  500 grams but at least 50 grams, yes, is what they said.  Less
24  than 50 grams -- less than 500 grams but at least 50 grams.
25          MR. FORRESTER:  May I approach?

1    THE CLERK:  The top of page 3 is what they came up

2  with.  They said yes to that one.

3    THE COURT:  Show that, if you would, to the defense.

4    MR. CANALES:  We just didn't hear right, Judge.

5    MR. FORRESTER:  Basically 50 to 500.

6    THE CLERK:  Right.

7    MR. FORRESTER:  Less than 500.

8    THE CLERK:  Less than 500 but greater -- at least

9  50 grams.

10    MR. FORRESTER:  Thank you.

11    THE COURT:  Okay.  At the time of sentencing,

12  Mr. Saldana, you'll have an opportunity to speak to the court

13  about the matter of an appropriate sentence as will your

14  attorneys, of course.

15    We'll be in adjournment.

16    (End of proceedings at 3:08 p.m.)

17                    *****

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT

2  WESTERN DISTRICT OF NORTH CAROLINA

3  CERTIFICATE OF REPORTER

4

5

6         I, Cheryl A. Nuccio, Federal Official Realtime Court

7  Reporter, in and for the United States District Court for the

8  Western District of North Carolina, do hereby certify that

9  pursuant to Section 753, Title 28, United States Code, that

10 the foregoing is a true and correct transcript of the

11 stenographically reported proceedings held in the

12 above-entitled matter and that the transcript page format is

13 in conformance with the regulations of the Judicial Conference

14 of the United States.

15

16        Dated this 10th day of August 2015.

17

18

19                 s/Cheryl A. Nuccio

20                 _____
                Cheryl A. Nuccio, RMR-CRR
                Official Court Reporter

21

22

23

24

25